[No. 12612.    Department Two.    January 19, 1916.]

## ANGELES BREWING & MALTING COMPANY et al., Respondents, v. H. CARTER et al., Appellants.[1]

APPEAL — REVIEW — FINDINGS. Findings upon sharply conflicting evidence will not be disturbed on appeal, where it cannot be said that they are not supported by the evidence.

COLLISION—INJURY TO VESSEL—NEGLIGENCE—FAILURE TO OBSERVE LIGHTS—LIABILITY. Where two steamers, the A. and the V. were approaching on opposite courses port to port, so that a third steamer, the C., following astern of the V. with the V. on her starboard bow, must have had an unobstructed view of the A., it was negligence, as a matter of law, for the C. to fail to observe the lights of the A.; and in case the collision was due to such negligence, it would be immaterial which vessel had the right of way.

SAME—NEGLIGENCE—FAILURE TO OBSERVE LIGHTS—FINDINGS AND EVIDENCE. In such a case, a finding of fact to the effect that the C. was first made aware of the proximity of the A., when the A. and V. had exchanged signals to port helms and the V. had swung to starboard, is not necessarily a finding that the A. was not in plain view of the C. prior to that time, so as to escape the imputation of negligence in failing to observe A.'s lights.

SAME—LOSS OF FREIGHT—VALUE—EVIDENCE—SHIPPING INVOICE—ADMISSIBILITY. Upon an issue as to the value of freight lost in a collision of steamers, duplicate invoices furnished by shippers to adjusters of the cargo are competent evidence of value, in the absence of evidence that the shippers' claims were fraudulent or in excess of the actual value of the goods lost and the amounts paid on that account.

SAME—LOSS OF FREIGHT—REIMBURSEMENT—INTEREST. In an action for damages from a collision, an award to reimburse the plaintiff for money paid out to shippers for freight lost should draw interest only from the time of the payments.

Appeal from a judgment of the superior court for King county, Vivian M. Carkeek, judge pro tempore, entered June 3, 1914, upon findings in favor of the plaintiffs, in an action in tort, tried to the court. Modified.

*Bronson, Robinson & Jones*, for appellants.

*A. W. Buddress*, for respondents.

[1]Reported in 154 Pac. 601.

MORRIS, C. J.—This is an action by the Angeles Brewing and Malting Company and its receiver, owners of the steamer Albion, to recover damages for injury incurred by that vessel in a collision with the steamer Chippewa off West Point, near Seattle. From a judgment in favor of the plaintiffs, the defendants have appealed. The facts as to the collision are well stated by the trial court in his opinion, which we adopt, italicizing those portions over which the parties are in dispute. The accompanying diagram, although somewhat exaggerated and not drawn to scale, will also assist in an understanding of the situation.

The steamer Albion left Seattle at about 10:30 o'clock on the evening of August 2, 1910, bound for Port Angeles. The same evening, the steamers Vashonian and Chippewa were coming to Seattle from down the Sound. After turning Four Mile rock, the Albion was steering a course of north northwest; the steamer Vashonian was approaching the Albion and steering a course of south southeast, and the Chippewa was approaching the Albion and steering a course of south by east, and was therefore on a course that was nearly parallel with the Vashonian, but the Chippewa was considerably astern. All the vessels had the regulation lights and the lights were properly burning. When the Albion turned Four Mile rock, the cabin lights of both the Chippewa and Vashonian were visible to her. The vessels mentioned continued to approach each other upon opposite courses until the Vashonian was ahead and *to the port of the Albion,* approaching the Albion, and when at a distance of some five hundred feet, the Albion blew one whistle and ported her helm three-quarters of a point. The Vashonian answered with one whistle and ported her helm three points. This gave her a heavy swing to the starboard and enabled both boats to pass each other with safety. At this moment the Chippewa, which had been coming astern and had about overtaken the Vashonian on her port quarter, blew two whistles as a signal to the Vashonian that it was the intention of the Chippewa to

pass to the Vashonian's port, and, immediately on blowing the two whistles, the captain of the Chippewa starboarded her helm three-quarters of a point. Up to this time the. Chippewa had not seen the Albion, but *was first aware of the proximity of the Albion by her red or port light coming into view as the Vashonian swung three points to the starboard.* After blowing the one whistle and then hearing the Chippewa's two whistles, known to pilots as a cross-signal, the Albion blew four whistles, the danger signal, and stopped and reversed her engines. After she stopped and reversed, she reversed a second time and stopped. The Chippewa, realizing that a collision was imminent, began to port her helm in an effort to pass astern of the Albion and between the Vashonian and the Albion, and in doing so, struck the Albion about amidships, inflicting the injuries which the plaintiffs complain of and for which they seek to recover from the defendants.

Respondent's contention
Situation found by trial court.

Appellant's contention

The crucial point of dispute in the case concerns the position of the Albion and the Vashonian just before the collision.

The trial court found that the two vessels approached port to port, which is the respondents' contention. The appellants, however, contend that the Albion was on the starboard bow of the Vashonian, which would make the approach starboard to starboard. If this is true, then the Vashonian was directly between the Albion and the Chippewa, and the former was not visible to the latter unless she could be seen over the upper works of the Vashonian. If, however, the Vashonian was to the port of the Albion, as found by the trial court, then the Vashonian being on the starboard of the Chippewa, which is undisputed, the Chippewa had an unobstructed view of the Albion, and failure to see her could be attributed only to the negligence of the Chippewa. The witnesses do not agree on this point. Those on the Albion at the time testified positively that the Vashonian was on her port bow, while Mr. Jackson, master of the Vashonian, testified that the Albion was on his starboard and crossed his bow. The evidence was sharply conflicting, but we are not prepared to say that the facts as found by the trial court are not supported by a preponderance of the evidence.

The appellants, however, contend that the findings as to the facts of the collision, which are practically a copy of the opinion, are inconsistent and do not support the conclusion that the Albion's lights were not obscured from the Chippewa and could have been observed by the exercise of reasonable diligence on her part. These claimed inconsistencies are stated as follows: If the Albion's lights came into view from behind the Vashonian so as to become visible to the Chippewa, as found by the court, then the Vashonian, being on the Chippewa's starboard bow, it necessarily follows that the Albion was also on the Chippewa's starboard bow, contrary to the finding that she was on the port bow. Also, if the Vashonian ported her helm and took a heavy swing to starboard to pass the Albion, it necessarily follows that the Albion was not on the port side of the Vashonian. On the other hand, if the Albion was on the port side of the Vashonian and

ported her helm sufficiently to swing her three-quarters of a
point to starboard, and if at that time she was, as is claimed,
dead ahead of the Chippewa, which was passing distance to
the port of the Vashonian, there was then no necessity for the
Vashonian to make any swing to starboard. The trial court,
however, adds that the Albion did not change her course to
pass the Vashonian. But though this may be so, it is also
apparent from the finding that the Vashonian had to swing
33 degrees around the circle to pass to port of the Albion,
which means that they were approaching starboard to star-
board. The court further found that the Albion was ap-
proaching the Vashonian and the Chippewa, both port to
port, and that the Albion at all times had the right of way.
Such a finding as to right of way can only be made upon the
assumption that the Albion was crossing the courses of the
Vashonian and the Chippewa, having them upon her port
side.

Although these findings may appear at first to be incon-
sistent, upon closer examination we do not find that they are
irreconcilable with the previous findings. None of them are
the bases for the finding that the Albion was on the port bow
of the Vashonian, on which the finding of negligence must
rest. The finding that the Chippewa was first made aware
of the proximity of the Albion when the Vashonian swung
to starboard is not necessarily a finding that the Albion was
not in plain view of the Chippewa prior to that time, nor is
the finding that the Vashonian swung three points to star-
board conclusive proof that such a maneuver was necessary
to enable her to pass the Albion in safety. The determina-
tion of which vessel had the right of way is unnecessary to
a finding that the collision was due to negligence on the part
of the Chippewa; since it is admitted that, when the Chip-
pewa and the Albion discovered that there was a misunder-
standing of intention, both vessels displayed proper seaman-
ship, and that finding does not militate against the essential
finding that the Albion was on the port bow of the Vashonian.

Construing the findings as a whole, we fail to see wherein they are defective.

Appellants apparently find no fault in the rule of law applied by the trial court. That, under the facts as found by the trial court, the failure by the Chippewa to observe the lights of the Albion constitutes negligence, as a matter of law, is fully supported by the cases relied upon. *The Gazelle*, 33 Fed. 301; *The New York*, 175 U. S. 187; *Brigham v. Luckenbach*, 140 Fed. 322.

Appellants, however, except to that portion of the judgment which was allowed as compensation for freight damaged in the collision, for the reason that the allowance made was the price of the freight lost as shown by the duplicate invoices furnished by the various shippers in response to a request sent out by the adjusters of the cargo. These invoices were admitted over objection that they did not show the value of the goods lost; but in the absence of some showing that the shippers' claims were fraudulently made or that the prices were in excess of the actual value, the invoices were competent evidence of the actual value of the goods lost and the amount paid by the respondents on that account.

Objection is made to the allowance of interest from October 2, 1910, the date on which the repairs on the Albion had been completed and she was returned to her run. The finding on which the judgment for interest was given is as follows: "All of the repairs, refitting, refurnishing, and adjustments occasioned by the collision were made by and the boat returned to her run on October 2, 1910, and this is an average date from which to compute interest." The damages allowed by the trial court were based on the amounts paid out by the respondents in repairing and refitting the boat and in paying the claims for lost and damaged freight. These amounts could be determined by computation, and interest should be allowed from the date when a right to reimbursement arose. But as the award was to reimburse the respondents for money paid out, interest should not be al-

lowed prior to the date of the original payment, as respondents had the use of the money until that time. The record does not disclose when the various payments were made, and we are unable to determine what would be a proper allowance of interest. Exhibit "I" is a bunch of vouchers for disbursements made on account of freight lost. The first of these vouchers shows payments of $1,648.76, but no dates on which the claims were paid are given. Mr. Janecke, receiver of the brewing company, testified that it was probably a year and a half (evidently from the date of the collision) before these claims were paid in full. Other vouchers show payments between November 3, 1910, and September 28, 1911. Exhibit "J," which consisted of vouchers for payments made for repairs, is not before us, and we find no testimony as to when these items were paid.

The judgment will therefore be reversed, and the cause remanded with directions to the trial court to allow interest on the various amounts paid out by the respondents on which a recovery was allowed, from the dates of their several payments.

FULLERTON, CHADWICK, and ELLIS, JJ., concur.